UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STANLEY A. GEIST,

                    Plaintiff,           07-CV-0065A(Sr)

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                    Defendant.

---

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #9. Presently pending before the Court is defendant, Hartford Life and Accident Insurance Company's motion for summary judgment on the administrative record (Dkt. #23) and plaintiff, Stanley A. Geist's motion to expand the administrative record (Dkt. #29). For the following reasons, it is recommended that plaintiff's motion to expand the administrative record be granted and the matter be remanded for further administrative review. It is further recommended that defendant's motion for summary judgment be denied without prejudice as premature.

**FACTUAL BACKGROUND**

**The Instant Action**

Plaintiff, Stanley A. Geist ("Geist" or "plaintiff") commenced this action in New York State Supreme Court, Erie County on or about December 29, 2006 against

defendant, Hartford Life and Accident Insurance Company ("Hartford" or "defendant"). Dkt. #1-3. Thereafter, on or about February 2, 2007, Hartford removed this action to the United States District Court, Western District of New York on the basis of federal question jurisdiction because plaintiff's claims were brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Dkt. #1. Plaintiff alleges that on or about October 1, 2005, defendant ceased payments under the group, long term disability insurance policy issued by Hartford to plaintiff's former employer, Occidental Petroleum Corporation ("Occidental"). Dkt. #1-3. Specifically, plaintiff seeks: (1) payment of unpaid long term disability benefits under the policy for the period October 1, 2005 through December 31, 2006; (2) payment of future long term disability benefits under the policy for the period January 1, 2007 through September 8, 2009 and (3) payment of his attorney's fees and costs related to this action. Id.

**Plaintiff's Employment and the Long Term Disability Plan**

Plaintiff began working for Occidental on or about October 15, 1979. Dkt. #24, ¶ 10. By reason of his employment, plaintiff was covered under the terms of the Occidental Long Term Disability Plan ("the Plan"). Id. at ¶ 11. The Plan was fully insured by the policy issued by Hartford to Occidental, Group Insurance Policy Number GLT-206372 ("the Policy") after October 1, 1995. Id. Most recently, plaintiff was employed as Occidental's Director - Product and Project Development. Id. at ¶ 12.

The Policy provides long term disability benefits for eligible employees of Occidental during those periods that eligible employees are totally disabled (as that term is defined in the Policy) and after the elimination period set forth in the Policy and as long as the claimant remains totally disabled. *Id*. at ¶ 4. The terms "total disability" and "totally disabled" are defined in the Policy as follows:

> **Total Disability or Totally Disabled** means that you are prevented by:
> (1) accidental bodily injury;
> (2) sickness;
> (3) mental illness;
> (4) substance abuse; or
> (5) pregnancy,
>
> from performing the essential duties of your occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by The Hartford. This test applies during the first 24 months of your Total Disability, including the Elimination Period.
>
> After that, to be Totally Disabled, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.
>
> Your failure to pass a physical examination required to maintain a license to perform the duties of your occupation does not alone mean that you are Totally Disabled.

Dkt. #24-1, Exhibit A, p.7; *see also*, Dkt. #24, ¶ 5. The policy further provides that an eligible employee with a disabling medical condition who is prevented from performing the duties of their own occupation, will be entitled to long term disability benefits under the Policy for twenty-four months, including the elimination period. Dkt. #24-1, Exhibit A, p.7; *see also*, Dkt. #24, ¶ 6. In order to continue to receive benefits beyond the initial twenty-four month "own occupation" period, the claimant must have a medical condition

-3-

that prevents them from performing the essential duties of any occupation for which the claimant is qualified based on their education, training or experience. Dkt. #24-1, Exhibit A, p.7; *see also*, Dkt. #24, ¶ 7. The Policy provides in pertinent part that: "The Hartford has full and exclusive responsibility for claims administration"; "The Hartford reserves the right to determine if your proof of loss is satisfactory"; "The Hartford shall have full and exclusive authority and responsibility for making all claim determinations"; and "The Hartford shall have full and exclusive authority and responsibility for reviewing denied claims on appeal." Dkt. #24-1, Exhibit A, pp.14-16; see also, Dkt. #24, ¶ 9.

**Plaintiff's Disability**

In or about August 1997, plaintiff discovered a mole on his abdomen that had changed color and began to bleed. Dkt. #24, ¶ 13. Plaintiff's physician determined that the mole was a stage II melanoma and the mole was surgically removed on October 28, 1997. *Id*. at ¶ 14. By letter dated March 11, 1998, plaintiff's surgical oncologist advised that,

> [plaintiff's] adjuvant therapy has been Interferon A which is hormonal therapy with quite a few side effects which he obtains three time a week. He will be receiving this over the next three years. The side effects can range from severe joint pain, headaches, malaise, weight loss, fevers, and therefore it will definitely affect his ability to perform his required work activities.

Dkt. #24-1, Exhibit B, Claim File p.355; *see also*, Dkt. #24, ¶ 15. In or about December 1997, plaintiff began receiving Interferon A (also known as "alpha interferon") treatments. Dkt. #24, ¶ 16. Plaintiff continued to perform his duties at Occidental until

May 18, 1998, when he stopped working due to his inability to perform his duties as a result of his ongoing Interferon A treatments. *Id*. Thereafter, plaintiff applied for long term disability benefits under the Policy in or about August 1998. *Id*. Plaintiff's application for long term disability benefits was approved and plaintiff began receiving monthly long term disability payments in the amount of $7,000.02 on or about November 17, 1998. *Id*. at ¶ 27. By letter dated January 11, 2000, plaintiff's claim for long term disability benefits was approved by defendant beyond May 11, 2000 pursuant to the "any occupation" provision of the Policy. *Id*. at ¶ 32. Thereafter, plaintiff received disability benefits under the terms of the Policy for nearly seven years. Dkt. #31, ¶ 6; Dkt. #24, ¶ 34.

During the period when plaintiff continued to receive disability benefits, Hartford's claim examiners conducted periodic reviews of plaintiff's condition and eligibility to continue to receive benefits under the terms of the Policy. Dkt. #24, ¶ 35. As part of this on-going claim review process, Hartford obtained updated information from plaintiff and plaintiff's physicians. *Id*. at ¶ 36. Based on the defendant's Statement of Undisputed Facts (Dkt. #24) and plaintiff's corresponding Objections (Dkt. #31), the Court notes that for the period October 2000 through December 29, 2006, the date when the instant action was commenced in New York State Supreme Court, Erie County, numerous documents and forms were submitted by plaintiff and various physicians relating to plaintiff's disability. Dkt. ##24 and 31. As recited in defendant's Statement of Undisputed Facts (Dkt. #24) and plaintiff's Objections (Dkt. #31), there is a detailed history of communication with Hartford relating to plaintiff's disability.

On March 18, 2002, Hartford submitted a series of inquiries to plaintiff's physician, Robert M. Zielinski, M.D., concerning plaintiff's condition, treatment and recovery from the side effects of the Interferon A treatment. Dkt. #24, ¶ 56. Dr. Zielinski responded by letter dated March 19, 2002, wherein he stated, in part:

> [h]e [plaintiff] received an extended course of alpha interferon for the diagnosis of malignant melanoma. His physician at that time, Dr. Richard Cooper, prescribed this course of therapy for two to three years and this was a typical length of time then. Two years was used more frequently so in that sense it was longer than average. The patient's complaints of fatigue and joint pain during the treatment are not unusual for this. Some patients do seem to feel better as the treatment goes on as they seem to adjust to the medication, but often these general constitutional complaints do persist throughout the course of therapy. ... the general course of events with a patient on alpha interferon is resolution of the constitutional findings after the interferon is discontinued. At this point Mr. Geist has been off therapy for some 15 months and so I would find it difficult to ascribe any continuing complaint of disability on that medication. When last seen in our offices in October of 2001 he was complaining of some stiffness in his back and knees which could be arthritic in nature. I would not think that there should be any long lasting effects of the interferon following its discontinuation.

Dkt. #24-1, Exhibit B, Claim File p.203. Thereafter, on or about April 12, 2002, Dr. Zielinski indicated that plaintiff was medically stable to participate in a Functional Capacity Evaluation. Dkt. #24-1, Exhibit B, Claim File p.195. The Functional Capacity Evaluation was completed by S. David Miller, M.D. on or about July 23, 2002. Dkt. #24-1, Exhibit B, Claim File pp.171-178; Dkt. #24, ¶ 61. In connection with the completion of the Functional Capacity Evaluation, Dr. Miller prepared a report wherein he stated, *inter alia*, "[plaintiff] has a residual chronic pain condition characterized by polyarticular pain complaints with associated diffuse tenderness, fatigue, and paresthesias in the

hands and feet." Dkt. #24, ¶ 67; Dkt. #24-1, Exhibit B, Claim File pp.171-178.

Additionally, Dr. Miller stated:

> [g]iven the clinical constellation of signs and symptoms, it is my medical opinion that [plaintiff] has developed fibromyalgia as a result of his chronic medical illness and protracted treatment with Interferon. Though it would be expected that the constitutional symptoms resulting directly from Interferon would have subsided by now, changes can occur within the central nervous system with protracted pain experience associated with chronic illness that lead to fibromyalgia and chronic pain experience, even though the underlying causative agent has been withdrawn.

Dkt. #24-1, Exhibit B, Claim File p.175. Finally, Dr. Miller noted that plaintiff had a capacity for a fifteen hour work week with flexible hours. *Id*. at Claim File p.178. In May and June 2003, plaintiff and Dr. Zielinski were asked for and did submit additional information concerning plaintiff's claim for long term disability benefits and plaintiff's diagnosis. Dkt. #24, ¶¶ 71-78. Thereafter, throughout April 2004 through June 2004, plaintiff and Dr. Zielinski submitted additional information concerning plaintiff's claim and diagnosis. Dkt. #24, ¶¶ 80-90.

In January 2005, plaintiff completed an Activities of Daily Living Questionnaire at the request of Hartford. Dkt. #24, ¶¶ 91-95. In response to a further request from Hartford, plaintiff completed a Claimant Questionnaire stating that he, "suffer[s] from the side effects of the very extensive drug treatment. Severe aches and stiffness in my joints (knees the worst) and spreading numbness and pain in my feet and hands (right hand the worst) [.] Overall depression occurs and ongoing fatigue is prevalent." Dkt. #24-1, Exhibit B, Claim File p.94. In a July 15, 2005 Attending

Physician Statement concerning plaintiff's abilities to perform physical activities, Dr. Zielinski confirmed that such activities "are limited by [plaintiff's] subjective complaints." Dkt. #24-1, Exhibit B, Claim File p.89. Moreover, in a Physical Capacities Evaluation Form dated July 18, 2005, Dr. Zielinski stated that, in a general workplace environment, plaintiff could sit for eight hours at a time, stand for four hours at a time and walk for two hours at a time. *Id*. at Claim File p.90. Based on the medical records supplied by Dr. Zielinski's office and the Physical Capacities Evaluation Form dated July 18, 2005, plaintiff's claim was referred for an employability analysis. Dkt. #24-1, ¶ 104.

The Employability Analysis Report concluded, based on Dr. Zielinski's report, that "in a general workplace environment, [plaintiff] is able to sit for 8 hours at a time, stand for 4 hours at a time, and walk for 2 hours at a time" and that plaintiff "can occasionally lift/carry/push/pull 20 pounds and "can occasionally drive, climb, balance, stoop, kneel, crouch, crawl and reach below waist level." Dkt. #24-1, Exhibit B, Claim File p.55. Accordingly, based upon the information in the Claim File, the Vocational Rehabilitation Clinical Case Manager for Hartford assigned the responsibility of conducting plaintiff's employability analysis, performed a job person match "at the Light strength level," and performed an "occupational comparison ... utilizing OASYS in order to verify the appropriateness of each occupation given the employee's work history, education, functional capabilities and skills." Dkt. #24, ¶ 108. As a result, several positions were found, including project engineer, department manager, environmental research project manager and safety council director. *Id*. at ¶ 109.

**Termination of Plaintiff's Long Term Disability Benefits and Appeal**

On September 27, 2005, based on plaintiff's medical records, the statements and information supplied by plaintiff and Dr. Zielinski, as well as the Employability Analysis Report, a Hartford claim examiner determined that plaintiff was no longer entitled to receive long term disability benefits under the Policy. Dkt. #24, ¶ 112; Dkt. #24-1, Exhibit B, Claim File p.50-53. On or about October 10, 2005, plaintiff appealed the discontinuance of his long term disability benefits. Dkt. #24, ¶ 123; Dkt. #30, p.4. During the time within which plaintiff's appeal was pending, Hartford, **unbeknownst to plaintiff**, solicited additional information from Dr. Zielinski. Dkt. #30, p.4. Specifically, an October 21, 2005 facsimile requested Dr. Zielinski to answer yes or no to the question "[p]lease advise whether [plaintiff] can perform sedentary to light work on a full-time 8 hour per day basis." Dkt. #24-1, Exhibit B, Claim File p.21. In response, Dr. Zielinski checked "yes". Thereafter, on or about October 27, 2005, Hartford upheld its decision to discontinue plaintiff's disability benefits. Dkt. #30, p.5.

When Dr. Zielinski learned that Hartford relied on his October 21, 2005 statement (checkmark) to deny plaintiff's disability benefits, Dr. Zielinski prepared a further two-page report purporting to clarify the context of his October 21, 2005 response. *Id*. Specifically, in his November 14, 2005 letter, Dr. Zielinski reiterated to Hartford that his involvement with plaintiff's medical care was strictly as a medical oncologist and further that he has no expertise in the areas of neuropathy or "the other complaints that [plaintiff] has." Dkt. #32. Moreover, Dr. Zielinski stated that,

> [w]hen I answered the questions on his functional capacity I
> was doing so from the medical oncology perspective and in
> the absence of any progressive cancer would have no
> reason to disable him on this account. However, it is clear
> the [plaintiff's] medical situation is no different now than it
> has been for a number of years and I can see no rationale
> for his disability having been approved for a number of years
> and now suddenly revoked on the basis of a medical
> evaluation by a medical oncologist.

Dkt. #32. Finally, Dr. Zielinski concluded that "[t]he entire basis of his [plaintiff's] disability has nothing to do with my specialty and using my evaluation as the sole basis of making a decision is, it seems to me, irresponsible." *Id*. Dr. Zielinski urged Hartford to send plaintiff for a repeat independent medical evaluation. *Id*. Hartford refused to consider Dr. Zielinski's November 14, 2005 report because it was received in November after Hartford's review concluded on October 27, 2005. Dkt. #24-10, Exhibit B, Claim File p.10. Indeed, Hartford advised plaintiff that not only would it not consider Dr. Zielinski's letter, but Hartford returned Dr. Zielinski's letter to plaintiff stating that the letter is not considered part of the administrative record of plaintiff's claim. *Id*.

## DISCUSSION AND ANALYSIS

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court of the United States held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). Where the plan has afforded its administrator discretion to interpret the terms of the plan, a reviewing court will uphold the Plan's

determination unless it is arbitrary and capricious. *Id.* In accordance with this standard, a court will overturn a decision to deny benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan v. Nynex Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (internal quotation omitted).

In the instant case, the parties vigorously dispute whether the *de novo* or more deferential, arbitrary and capricious standard of review applies. While this Court concedes that that issue will need to be decided, it need not be decided at this time, because under either standard, the matter must be remanded for further administrative review on the complete record. By reason of his motion to expand the administrative record, plaintiff is in essence claiming that Hartford's refusal to consider Dr. Zielinski's November 14, 2005 letter denied him a full and fair review to which he is entitled under Title 29, United States Code, Section 1133(2). Specifically, section 1133(2) provides: "[i]n accordance with regulations of the Secretary, every employee benefit plan shall - (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." The Second Circuit has held that "[a] full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." *Aitkins v. Park Place Entertainment Corporation*, No. 06-CV-4814, 2008 WL 820040, *20 (E.D.N.Y. Mar. 25, 2008), *citing Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008).

Hartford's solicitation of additional information from Dr. Zielinski, **unbeknownst to plaintiff**, and Hartford's reliance on that additional information supplied by Dr. Zielinski to deny plaintiff's disability benefits, coupled with Hartford's refusal to consider Dr. Zielinski's November 14, 2005 report resulted in an incomplete administrative record. Thus, plaintiff was denied a full and fair review of the decision to deny his disability benefits. Accordingly, this Court recommends that before the merits of plaintiff's underlying claim may be reached, the matter must be remanded for further administrative review on the complete record.

## **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion to expand the administrative record (Dkt. #29) be granted and that the matter be remanded for further administrative review. It is further **RECOMMENDED** that defendant's motion (Dkt. #23), for summary judgment on the administrative record pursuant to Fed.R.Civ.P. 56 be **DENIED** without prejudice as premature.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to counsel for the parties.

**SO ORDERED.**

DATED:   Buffalo, New York
         August 7, 2009

                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**